The Pittsburgh Library Association, Appellant, *v.* the Mercantile Library Hall Company, Richard M. Gulick and H. M. Bennett, copartners as R. M. Gulick & Co., and H. M. Bennett, F. L. Stephenson, George I. Whitney and Peter J. McNulty.

*Corporations—Trusts and trustees—Pittsburgh Library Association—Mercantile Library Hall Company—Acts of March 18, 1859 and February 3, 1870.*

The Pittsburgh Library Association was incorporated on February 12, 1849, under the name of the Young Men's Mercantile Library and Mechanics' Institute, "for the purpose of promoting and encouraging general information upon commerce, manufactures and the mechanic and useful arts." The Mercantile Library Hall Company was incorporated by the Act of March 18, 1859, P. L. 811, which provided that it should be the duty of the corporation as soon as a sufficient amount of stock had been subscribed to purchase ground and to erect thereon a library building suitable for the

use of the Young Men's Mercantile Library and the Mechanics' Institute, and that when this building was ready for use it should be perpetually leased to the Young Men's Mercantile Library and Mechanics' Institute on certain terms. The Hall Company erected the building, but the Library Association did not lease it. On February 3, 1870, an act was passed which provided that the Hall Company might lease its grounds and building to the Library Association on such terms and conditions as might be agreed upon between the respective corporations. In 1871, an agreement was entered into by which the Hall Company was to retain possession and control of the building, and rent to other parties the portion of the building not occupied by the Library Association. This agreement recited that the Library Association was not able to assume the obligations of the lease contemplated in the charter of the Hall Company. It was provided that the agreement should be ratified by the stockholders of the Hall Company, but such ratification was never obtained. A large debt was incurred by the Hall Company in the erection of the building. In 1890 this debt was refunded, and shortly thereafter one B. obtained a controlling interest in the stock of the Hall Company. The Library Association filed a bill in equity against the Hall Company and B., alleging that the defendants proposed to divert the property from the use for which it had been built. The evidence did not show any fraud on the part of B. *Held*, (1) that as the terms of the creating act were not complied with, plaintiff had no rights or interest in the property in dispute by virtue of the act of March 18, 1859; (2) that as the agreement of March 10, 1871, was not ratified by the stockholders of the Hall Company, plaintiff acquired no interest in said property by virtue of said agreement; (3) that the bill should be dismissed for the reason that the plaintiff had failed to show any ground of complaint.

Argued Nov. 11, 1898. Appeal, No. 219, Oct T., 1898, by plaintiff, from decree of C. P. No. 2, Allegheny Co., Nov. T., 1897, No. 794, dismissing bill in equity. Before GREEN, MC-COLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity for an injunction.

DOTY, P. J., of the 10th judicial district, specially presiding, found the facts to be as follows:

#### FINDINGS OF FACT.

1. Plaintiff was incorporated by an act of assembly of this commonwealth, approved February 12, 1849, under the name of the "Young Men's Mercantile Library and Mechanics' Institute," for the object in said act of assembly set forth, and with the power to take and hold real estate, and is a bondholder and stockholder of the "Mercantile Library Hall Company," de-

fendant. A copy of said act of incorporation, marked exhibit "A" is attached to bill. The name is now "The Pittsburgh Library Association," its original name having been changed by an order of the court of common pleas, No. 2, of this county, at No. 120, April term, 1878.

2. The Mercantile Library Hall Company, defendant, was incorporated under an act of assembly of this commonwealth, approved March 15, 1859, for the objects in said act of assembly set forth, a copy of said act of incorporation marked exhibit "B," is attached to plaintiff's bill.

3. A supplement to the act incorporating the said Mercantile Library Hall company was passed and approved February 3, 1870, for the objects and purposes in said act set forth, a copy of said act marked exhibit "C," is attached to plaintiff's bill.

[The act of 1870 provided that "the said Mercantile Library Hall Company may lease its grounds and buildings to the Young Men's Mercantile Library Association and Mechanics' Institute on such terms and conditions as may be agreed upon between the two respective corporations; provided, that the rents, which shall be received by the said Young Men's Mercantile Library and Mechanics' Institute, over and above the rent, taxes, interests, insurance and repairs shall be paid to the Mercantile Library Hall Company to reimburse the same for the cost of said ground and buildings; provided further, nevertheless, that if the said Mercantile Library Hall Company shall agree thereto, the said surplus receipts and revenues, and the inclusive dividends arriving therefrom, may be appropriated to the purchase of stock in the Mercantile Library Hall Company."]

4. Said Mercantile Library Hall Company purchased the ground and erected the buildings contemplated by its act of incorporation in the year 1870, or early in 1871, which building, from the time of its erection, has been occupied in part by the library association.

5. In pursuance of the act of February 3, 1870, an agreement was made and executed by the officers of the two corporations, whereby it became the duty of the Hall Company to manage the building and grounds and apply the net proceeds from the rents and revenues thereof, during the term, first, to the payment of interest on the indebtedness of the Hall Company, and second,

to the liquidation of the floating debt and mortgage bonds of said Hall Company, and to do such other things as therein set forth. The agreement by its terms was to be subject to the ratification of the stockholders of the Hall Company, but such ratification was never obtained. The Hall Company, however, continued in possession and control of the building, leasing the portion not occupied by the Library Hall Association and receiving the rents.

6. By the act incorporating said Mercantile Library Hall Company and the supplement thereto above referred to, said company was empowered to borrow money and secure the payment of the same by issuing bonds and giving a mortgage on said ground and property. And from time to time the said Mercantile Library Hall Company did issue bonds and execute and deliver mortgages for the purposes of procuring money for the purchase of ground and the erection of a building, as provided in the said act of incorporation and supplement above referred to.

7. Subsequent to the 1st day of July, 1889, and prior to the 1st day of December in said year, the mortgage indebtedness of said Mercantile Library Hall Company upon said' property was as follows : (1) mortgage to the Shields estate for real debt of $30,000, the same having been given to secure balance of unpaid purchase money for the ground upon which said library building was erected, said mortgage being recorded in the recorder's office of Allegheny county, in mortgage book, vol. 58, page 95; (2) mortgage to the Soldiers' Sanitary Home, subsequently assigned to the Western Pennsylvania Hospital, for the real debt of $100,000, the said mortgage being dated June 28, 1869, and recorded in said recorder's office, in mortgage book, vol. 135, page 206 ; (3) mortgage to Wm. Frew et al., trustees, for real debt of $30,000, said mortgage being dated April 1, 1871, and recorded in said recorder's office in mortgage book, vol. 126, page 56.

Upon this last mentioned mortgage a writ of scire facias was issued at No 200½, September term, 1889, of the court of common pleas, No. 1, of this county, and judgment was recovered thereon in the sum of $66,846.03.

8. On June 23, 1890, all the mortgage indebtedness of the Mercantile Library Hall Company, excepting the Shields mort-

gage, was refunded, and a new mortgage was placed and issued therefor, the same being recorded in said recorder's office in mortgage book, vol. 531, page 130; the real debt secured by said mortgage is $150,000, payable twenty years after date; the interest is payable semiannually on the 1st days of April and October in every year, and on a six months' default in the payment of any semiannual instalment of interest, the trustee named in said mortgage, the Union Transfer and Trust Company, of Pittsburg, may, at its option, treat the whole debt as payable and issue a scire facias thereon.

9. Shortly after said debt was refunded, H. M. Bennett, one of the defendants herein, purchased a controlling interest in the stock of the Hall Company. The total number of shares in the company were 10,414, and of these 5,576 are held by the said H. M. Bennett. The stock of the said Mercantile Hall Company was subscribed and paid for thirty years ago, has never paid a dividend, and was regarded by some of the holders thereof as a contribution to the plaintiff corporation, to which some stock was transferred.

10. On February 20, 1891, a bill in equity relating to the aforesaid trust property was filed in the court of common pleas, No. 1 of Allegheny county, at No. 962, March term, 1891, wherein the said Mercantile Library Hall Company was complainant, and the complainant and certain others who were tenants of the aforesaid trust property were respondents; and subsequent to the default complained of and set forth in the above paragraph of this bill, the following order was made in said proceedings, viz: "And now, September 25, 1891, by agreement of parties, the court do now order that the rents now unpaid by the tenants, parties to this litigation, shall forthwith be paid by said tenants to Frank L. Stevenson, and be by him at once applied to the payment of the interest upon the encumbrances upon the property, already due, and that to fall due hereafter, subject to the further order of the court. This order is made without prejudice to the rights of the respective parties."

Pursuant to said order of court, and as a result of said proceedings at the number and term referred to, the said defendant Hall Company paid the interest on said indebtedness for some time.

11. The interest coupons maturing on the first day of Octo-

ber, 1897, were not paid by the defendant company. The funds
in its hands accruing from the rents were insufficient to pay the
same. The amount in the hands of the Hall Company on
April 1, 1897, was $159.60, and the amount on October 1, was
$16.52.

12. The ground cost . . . . . $ 32,000 00
    The construction . . . .     255,221 21

    Making a total cost . . . . $287,221 21

The Library Association contributed nothing to the construction account.

13. The defendants, F. L. Stephenson, George I. Whitney,
Peter J. McNulty and H. M. Bennett are officers and directors
in said Mercantile Library Hall Company.

#### CONCLUSIONS OF LAW.

1. As the terms of the creating act were not complied with,
plaintiff has no rights or interest in the property in dispute by
virtue of the Act of March 18, 1859, P. L. 811.

2. As the agreement of March 10, 1871, was not ratified by
stockholders of the Hall Company, plaintiff acquired no inter-
est in said property by virtue of said agreement.

3. That the bill be dismissed for the reason that the plaintiff
has failed to show any ground of complaint.

#### STATEMENT.

Few material facts are in dispute. Nearly every important
fact averred in the bill is either not denied in the answer, or is
sustained by the testimony. The bill assumes a trust relation
between the two corporations, and then avers numerous acts to
show an abuse of the trust by the defendants. The complaint
is that H. M. Bennett, inspired and assisted by the other defend-
ants, pursued a course to further his own interests and to defeat
the rights of the complainant under the trust and in the trust
property. In order to sustain the complaint, three specific
charges are made: (1) that said Bennett fraudulently obtained
control of the Hall Company; (2) that after obtaining control,
the property was wilfully mismanaged; (3) that there was wil-
ful default in the payment of the coupons maturing in April
and October, 1897.

The said Bennett now holds a majority of the stock. That

fact is clearly established in the testimony, and is not denied in the answer. It is denied, however, that any part of the stock was secured by fraud or misrepresentation, or with any purpose of preventing the carrying out of the objects for which the Hall Company was organized. It is plain that the Hall Company was incorporated for the purpose of erecting a building to accommodate the Library Association, but it is equally plain that this was not to be done at a loss to the stockholders of the Hall Company. The act of incorporation distinctly provided that such stockholders should be reimbursed for the cost of ground and buildings, with interest not exceeding six per cent. The Library Association was to be ultimately benefited, but not at the expense of the stockholders of the Hall Company. The capital was invested in ground and buildings, and the stock had intrinsic although little market value. There can be no question about the right of the stockholders of the Hall Company to make sale and transfer of their stock. With such right conceded, the mere act of purchasing the stock is not sufficient to convict the present holder of fraud. Bennett had a right to buy all or any part of the stock. That he holds a controlling interest is immaterial. Plaintiff's right can be enforced against the defendant company no matter by whom the stock may be held.

As to the charge of mismanagement, the testimony is very unsatisfactory. It is alleged that there was a failure to rent parts of the building, and that other parts were leased at less rent than the properly was fairly worth. After a careful review of the testimony, we were not able to find either allegation well founded. The contention is that, with proper management, a sufficient sum would have been realized "to have paid off the floating debt of said defendant, together with six per cent interest on the cost of the ground and buildings of said trust property, and a sum in excess thereof which should have been applied to the liquidation of the indebtedness for the said grounds and buildings." If such is the fact, it is not shown in the testimony. We have examined the evidence in vain to obtain data on which to base a calculation. We have the cost of construction, and can figure out the annual interest thereon. The present revenues are inadequate to pay the interest on cost of ground and buildings. There is evidence to justify finding

that a fair rental for the theater would be $10,000, or $2,000 more than is now obtained. The room formerly occupied by Horne & Co. is now vacant and the rent then paid was $1,500. But we have no evidence as to cost of repairs, insurance and taxes. It has not been shown, however, that a tenant could have been obtained for the Horne room at a fair price, or at a price approaching the former rental. It has been impossible for us to gather from the testimony any accurate information as the actual net income, or the probable net income under unexceptionable management.

The allegation of wilful default in the payment of coupons maturing in 1897, is without evidence. The coupons were not paid, but there is no evidence that the Hall Company had funds with which to make payment. Nor is it shown that with proper management the Hall Company would have had funds sufficient for payment of coupons at maturity. The plaintiff has failed to show any fraud or mismanagement to its prejudice, and failing in these respects, the relief prayed for cannot be granted.

The relation between the two corporations is peculiar. It was defined by MITCHELL, J., in Library Hall v. Pittsburg Association, 173 Pa. 39, as "practically the position of trustee and cestui que trust." This case not only defines the relation which exists between these companies, but likewise defines the rights and responsibilities belonging to each. The Hall Company is bound to act in the utmost good faith to effect the purpose of its incorporation, and on failure so to act, the association can seek redress in the courts of equity. But the same authority holds that " the stockholders of the Hall Company are entitled to keep the management of the property in their own hands until the terms of the act should be complied with." Under the act of incorporation (March 18, 1859, P. L. 811) the association was entitled to possession under a perpetual lease on certain conditions, and it was likewise entitled to a conveyance on other conditions. It is not pretended that the terms of the act were complied with in any respect. The act contemplated that the Library Association should take possession, and assume the care and responsibility of managing the property, and reimburse the stockholders of the Hall Company the amount invested in ground and buildings. The building was erected in 1870, and the Library Association has occupied a part of it

ever since, but it contributed nothing to the construction account, and in no way complied with the terms and conditions of the act of 1859. It has permitted the Hall Company for many years to manage and control the property because it was " manifestly injudicious for it to assume the obligations of the lease contemplated in the charter of the Library Hall Company." It is settled that the association has no right to the possession until the terms prescribed in the act of incorporation are complied with. It would seem to follow that the association has no rights in the property until the terms prescribed in the act of incorporation are complied with. The Hall Company, it is true, was organized for the purpose of providing a building for the Library Association, but it was contemplated at the time that the stockholders were to be repaid the outlay made for ground and building. The Library Association serves a good purpose; it is a very useful institution. But if it desires the benefits of the act of 1859, it must be willing to assume the obligations and burdens imposed by the act. The property of the Hall Company cannot be appropriated even to a worthy institution without the consent of the stockholders.

The Library Association never complied with the terms of the act of 1859. There is no such contention now. The plaintiff claims an interest in the property and bases its right to relief on a contract, which was made and executed by the officers of the two corporations on March 10, 1871. The contract expressly provided that it should be subject to the ratification of the stockholders of the Hall Company. The agreement contemplated that the Hall Company, without consideration, should retain the control and management of the property, and in some other respects, varied materially the conditions imposed by the act of 1859. It was likely for this reason, therefore, that the contract was made subject to the ratification of the stockholders. No such ratification was ever obtained. Nor has it been shown that the agreement was made known to the stockholders and acquiesced in by them. The fact appears that the Library Association occupied part of the building and paid rent therefor. The agreement therefore cannot be made the foundation of this proceeding. For the reasons already given, the plaintiff company has failed to show that it is entitled to the relief prayed for.

And now, September 20, 1898, this cause came on to be heard, and was argued by counsel, and thereupon, upon consideration thereof, it is ordered, adjudged and decreed that the bill be dismissed at the costs of the complainant.

*Error assigned* was the decree of the court dismissing the bill.

*G. W. Williams*, with him *D. T. Watson, Johns McCleave, Alex. M. Neeper* and *Hilary B. Brunot*, for appellant, cited Library Hall Co. v. Pittsburgh Library Assn., 173 Pa. 30; Irvine v. Dunham, 111 U. S. 327; Pomeroy's Equity Jur. sec. 1077; Duncomb v. N. Y., etc., R. R., 84 N. Y. 198; Del. & Hudson Canal Co. v. Penna. Coal Co., 21 Pa. 146; Kelsey v. Murphy, 26 Pa. 82.

*P. C. Knox*, with him *James H. Reed* and *Edwin W. Smith*, for appellee, cited Thomas v. West Jersey R. R., 101 U. S. 71; Central Transportation Co. v. Pullman's Palace Car Co., 139 U. S. 24.

PER CURIAM, January 3, 1899:

An examination of the testimony in this case satisfies us that the findings of fact made by the learned court below are fully sustained by the evidence. As to the allegations of fraud on the part of the defendants they are entirely without support from the testimony. The conclusions of law found by the court, in our judgment, are quite correct. It would be a useless waste of time to review all these matters in detail, and we therefore affirm the decree on the opinion of the court below.

Judgment affirmed and appeal dismissed at the cost of the appellant.